IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
|     MELISSA ANN MEDLEY, | ) | CHAPTER 13 |
| | ) | |
|     Debtor. | ) | CASE NO. 08-70572 |

**MEMORANDUM DECISION**

      The matter before the Court is the joint request of the Debtor and DaimlerChrysler Financial Services Americas, LLC to approve a Reaffirmation Agreement signed by the Debtor on June 4, 2008 and filed by DaimlerChrysler with the Court on June 13, 2008.  This Agreement concerns an automobile purchase contract for a 2006 Chrysler 300 automobile.  Although the Debtor is represented in this case by Michael D. Hart, Esq., who appeared with her at the hearing in this matter, he did not represent her in connection with the negotiation of the Agreement.  As a result he did not sign the certification provided in the reaffirmation agreement form for debtor's counsel.  This Court held a hearing pursuant to notice to the parties on July 7, 2008.  Ms. Medley and Mr. Hart appeared but no one appeared on behalf of DaimlerChrysler.  Although the schedules filed in this Court indicate that the Debtor's living expenses at the time of filing her petition in this case exceeded her take-home pay by $1,360 per month, Ms. Medley in very strong terms requested, almost demanded, that the Court approve the Agreement because she is an adult and knows what she wants to do.  Because the Debtor testified that her income had significantly increased since the time she filed this case as a result of additional employment, the Court took the matter under advisement until she could provide confirming proof of such claim to her attorney and he could file the same with the Court.  That

1

documentation was filed with the Court on August 4, subsequent to Ms. Medley having been granted a discharge by the Court in this case on July 29.  After review of such information and a careful review of the information contained in the Debtor's schedules and statement of financial affairs, the Court, under the quite unusual circumstances presented here and discussed below, will approve the Reaffirmation Agreement.

       DaimlerChrysler has not filed a proof of claim in this case and did not file with the Reaffirmation Agreement a copy of the original vehicle purchase contract.  The Court has encountered some difficulty in reconciling the information contained in the bankruptcy petition and represented by the Debtor in her testimony with the figures contained in the Agreement.  According to Schedule D, the Debtor represented that at the time she signed her schedules, March 31, 2008, the car was valued at $15,250 and was subject to a lien in favor of DaimlerChrysler securing a balance owing of $11,000.  Furthermore, her statement of financial affairs represents that on February 7, 2008 she paid to "Chrysler Financial" the sum of $7,500, leaving an amount still owing of $11,329.97.  Although her testimony at the hearing was not very specific as to the amount still owing on the car, it seemed to be consistent with the figures contained in her petition.  The Reaffirmation Agreement, however, recites that she is agreeing to pay to the creditor the total sum of $16,960.50, which included the sum of $178 for the creditor's legal fees, in seventy consecutive monthly installments of $239.75 each, at a per annum interest rate of 14.79%, beginning May 16, 2008.  A careful review of the Agreement indicates that $16,960.50 is inclusive of interest because such amount is the product of seventy times $239.75.  Using the monthly equivalent of 14.79% per annum as the interest rate component in a standard loan amortization program for seventy monthly payments of $239.75 each results in a beginning

principal balance of $11,200.05. Although this figure may be a little off because it is not clear if the $178 legal fee item accrues interest or not, it is certainly close enough to satisfy the Court that figures contained in the Agreement are reasonably consistent with the Debtor's own understanding of what she owes on the car.

Part of the Reaffirmation Agreement documentation filed with the Court is the Debtor's written statement in support of the request to the Court to approve such agreement. Such statement represents income and expenses of $377.58 and $1,217.58, respectively, leaving a balance of "$840" to make the monthly payment under the Agreement. This suggests that the Debtor may have inadvertently transposed the income and expense figures, because their difference would yield a negative amount rather than the positive figure contained in such statement. In any event the Court is not able to give any weight whatsoever to the figures contained in such statement because they have no observable connection to either the information contained in her bankruptcy schedules or the reality of her financial circumstances.

Ms. Medley's bankruptcy schedules represent that at the time of filing her petition she was unmarried and had three children, aged thirteen, fourteen and sixteen, had take home-pay as a CNA employed by Nurse Finders for the last eight years of $1,217.58 monthly against household expenses and monthly payment obligations of $2,577.66, and therefore a monthly net income of a negative $1,360.08. Schedule B also reflects that she owns a second car, a 2000 Pontiac Grand Am, valued at $2,800, which is apparently driven by her son, who she says will be going to college next year, and which she testified is in good operating condition. Such schedules also reflect that at the time of her bankruptcy filing the Debtor had $4,000 in the bank,

of which she has claimed $1,447 as exempt pursuant to Va. Code § 34-4,[1] and a personal injury settlement valued at $12,667, all of which is claimed as exempt pursuant to Va. Code § 34-28.1. They further reflect that she has claimed the Grand Am as exempt pursuant to Va. Code §§ 34- 4 and 34- 26(8) and $2,979 equity in the Chrysler 300 as exempt pursuant to Va. Code § 34- 4. The information filed following the hearing at the Court's request represents recent earnings by the Debtor as follows:  $34.10 for 2.75 hours in the pay period ending May 19, 2008; $93.01 for 7.50 hours in each of the pay periods ending June 5, June 6, June 11, June 15, and June 26; $312.02 for thirty hours in each of the pay periods ending June 9 and July 6; and $184.47 for fifteen hours in the period ending June 29, all of these earnings being at the rate of eleven dollars per hour.  Her counsel also filed copies of other pay records for take-home pay of $157.68 for 22.75 hours at $11.50 per hour in the period ending June 2 and $163.00 for 23.75 hours at the same rate during the period ending July 7**.**  The Court is uncertain which of these records are applicable to Nurse Finders and which to other employment or if they all relate to other employment as the name of the payer of the compensation is not indicated.  The records do indicate payments of $312.02, approximately the amount testified to by the Debtor, for thirty hours each for the pay periods ended June 9 (a Monday) and July 6 (a Sunday).  The total income received by Ms. Medley according to the pay records provided to this Court is $1,628.34 for payments received from May 19 to July 7.  These earnings are more sporadic and seem less assured than her own perception of her higher earnings in her hearing testimony.  The Debtor testified that she has been able to produce additional income by working double shifts totaling

---

[1] Although this information indicates $2,553 in the bank not claimed as exempt by the Debtor, the Trustee, for reasons not apparent on the record, filed a "no asset" report in this case with the Court on July 28, 2008.

sixteen hours per day. When asked by the Court as to how long she believed she could continue this pace of work, she testified to the effect that she could and would do what was necessary for her to do in order to make the car payments.

The foregoing recitals constitute the Court's Findings of Fact with respect to this matter.

## CONCLUSIONS OF LAW AND DECISION

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A reaffirmation agreement deals with the question whether a particular indebtedness which otherwise would be discharged in a bankruptcy case will nevertheless be reaffirmed and therefore continue as an undischarged legal obligation of the bankruptcy debtor. In addition, it involves the adjustment of the debtor-creditor relationship between a bankruptcy debtor and a creditor holding a lien against personal property owned by the debtor. Accordingly, the Court concludes that the approval of a reaffirmation agreement is a core bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(I) or (O) or both.

In the circumstances presented here it is this Court's obligation established by Congress to hold a hearing upon a request to approve a reaffirmation agreement made by a bankruptcy debtor and to withhold such approval unless the Court is persuaded that the reaffirmed obligation does not impose an "undue hardship on the debtor or a dependent of the debtor" and "is in the best interest of the debtor." 11 U.S.C. § 524(c)(6)(A). Furthermore, 11 U.S.C. § 524(m)(1) provides that if the debtor's statement submitted in support of the

reaffirmation agreement indicates that his or her monthly expenses exceed her income, "it shall be presumed that such agreement is an undue hardship on the debtor." Such presumption may be rebutted, however, "if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed under the terms of such agreement." *Id.*

If the matter before the Court were to be determined solely on the basis of the income information provided to the Court, it would be quite apparent that the presumption of "undue hardship" would not have been rebutted and the Court would be obliged to decline to approve the Agreement. The other circumstances presented here, however, make this determination much more problematic. According to the information contained in her statement of financial affairs, in February of this year Ms. Medley paid $7,500 to the creditor upon this debt. In contrast to the more common situation presented in this Court of the debt being worth more than the car, in this case, undoubtedly as a result of the $7,500 payment, the Debtor has significant equity in this vehicle. She has claimed that equity as exempt by partial use of the "homestead" exemption provided to her by the Code of Virginia in § 34- 4. Although her reported income still appears to be less than her household expenses, she has recourse to money in the bank, represented in her schedules to be $4,000 at the time of her filing, as well as a personal injury settlement valued at $12,667. While this Court doubts as a practical matter that the creditor would seek to repossess the vehicle in question if the Court were to decline to

approve the Agreement,[2] in light of the current apparent equity "cushion" in its collateral, it might be tempted to do so, thereby putting the Debtor in a situation of either letting the car go and losing her equity, using her cash reserves to pay the creditor, or litigating with the creditor, which likely would seek to offset its litigation expenses against the equity in the car.  None of those prospects could be very appealing or advantageous to the Debtor.  As car payments go these days, a monthly payment obligation of $239.75 is not comparatively onerous.  With the Debtor now having received her discharge and with equity in her car, she might even conceivably be able to refinance her obligation at a considerably more attractive interest rate than the 14.79% figure contained in the Agreement.  Lastly, the Debtor does seem to have considerable determination and a willingness to work long hours to achieve her goals.  The Court is further satisfied that she understands the possible adverse consequences to her if she should be unable to meet her payment obligation under the Agreement.

Because  the Debtor (i) has access to other financial resources in addition to her income, (ii) is able to work more hours and increase her income, (iii) has significant equity in her car which she created by her apparently voluntary payment prior to bankruptcy, and (iv)  is determined to keep the car and do what is necessary to do so and simultaneously provide for her family, the Court, admittedly with some reservations and reluctance on its part, will enter an order approving the Agreement.

---

[2] The Court  notes that it has not had occasion to decide whether a secured creditor's repossession of collateral with respect to a contract of which the debtor has indicated an intent to reaffirm, has followed through upon such stated intent, and has maintained her payments in a current status, but the court has declined to approve the reaffirmation agreement, violates the automatic stay or bankruptcy discharge injunction.  *See In re* Donald, 343 B.R. 524 (Bankr. E.D.N.C. 2006).

ENTER this 11th day of August, 2008.

/s/ William F. Stone, Jr.

UNITED STATES BANKRUPTCY JUDGE